**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 15 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

TONY A. RINGOLD; RONALD A.
BROWN,

    Defendants - Appellants.

Nos. 02-3251 and 02-3254

---

Appeal from the United States District Court
for the District of Kansas
(D.C. No. 02-CR-10008-WEB)

---

Lanny D. Welch, Assistant United States Attorney (Eric F. Melgren, United States
Attorney, with him on the brief), Wichita, Kansas for Plaintiff-Appellee United
States of America.

Paul S. McCausland, Young, Bogle, McCausland, Wells & Blanchard, P.A.,
Wichita, Kansas for Defendant-Appellant Ringold.

Timothy J. Henry, Assistant Federal Public Defender for the District of Kansas
(David J. Phillips, Federal Public Defender, with him on the brief) for Defendant-
Appellant Brown.

Before **SEYMOUR** and **KELLY**, Circuit Judges, and **SHADUR**, District Judge.[*]

**SHADUR,** District Judge.

Tony A. Ringold ("Ringold") and Ronald A. Brown ("Brown") were indicted on January 30, 2002 for possession with the intent to distribute 179 pounds of marijuana in violation of 21 U.S.C. §841(a)(1). Defendants filed a joint motion to suppress the evidence of the marijuana on the ground that it had been obtained in violation of their Fourth Amendment rights. After an evidentiary hearing the district court denied that motion (Nos. 02-10008-01 and 02-10008-02, 2002 WL 539042 (D. Kan. Apr. 9, 2002)). **[cited "Opinion at --"]** Each defendant then entered a guilty plea pursuant to Fed. R. Crim. P. 11(a)(2), conditioned on his right to appeal the suppression ruling. We affirm the district court in both cases.

Facts

On January 15, 2002 Kansas Highway Patrol Sergeant Travis Phillips ("Phillips") was driving a marked Kansas highway patrol vehicle eastbound on Interstate 70. He was accompanied by WaKeeney Police Department Officer

---

[*] The Honorable Milton I. Shadur, United States District Judge for the Northern District of Illinois, sitting by designation.

Jason Walt ("Walt"). Near milepost 140 in Trego County, Phillips observed an eastbound Chevrolet Blazer in the right hand lane with California license plates. Following behind the Blazer, Phillips ran a check on the license plate and learned that it was a rental car.

After the plate checked out, Phillips drove the patrol car alongside the Blazer for a few moments before passing it. He saw two African-American males looking straight ahead down the road (Brown was driving and Ringold was in the front passenger seat) and noted a "tree-type" air freshener hanging from the rearview mirror. Phillips pulled ahead of the Blazer and moved back into the right hand lane. When he was about a quarter to a half mile ahead of the Blazer, Philips slowed his car as he saw the Blazer turn off of the Interstate at Ellis, Kansas. Telling Walt that he wanted to see why the Blazer had left the Interstate, Philips made a u-turn, also got off at the Ellis exit and observed the Blazer pulling into Shuster's Service Station, a gas station and convenience store.

At the station Brown parked the Blazer on the outside of the pump island nearest the store, paid the attendant and then went to the bathroom while Ringold began pumping gas into the car. There were no other cars in front of or behind the Blazer. Phillips pulled up to a parking area adjacent to the service station, parking the patrol car at an angle partially outside a spot so that his car was pointing somewhat toward the front door of the service station. Phillips' car was

at least 15 or 20 feet northeast of the Blazer and was not blocking it from moving forward or backward.

After getting out of the patrol car Phillips and Walt bought soft drinks from a machine in front of the station and walked over to Ringold, who was putting gas in the car. Phillips stood on one side of Ringold and engaged him in conversation, while Walt stood in the vicinity where he could hear, but he did not say anything. Both Phillips and Walt were armed, but their guns were holstered. Defendants and the two officers were of roughly the same physical stature.

After the two discussed the cold weather and snow, Phillips asked Ringold where he was from and whether he was on vacation. Ringold responded that he was from Los Angeles and was driving through Kansas on the way to Philadelphia to attend his grandmother's funeral. During that discussion Brown came out of the service station and heard Ringold's comment about the funeral before checking the pump and going back to the station to get his change.

Phillips told Ringold that he sometimes got reports of illegal drugs or weapons being transported from places like Los Angeles to Philadelphia and asked Ringold if he were carrying anything like that. After Ringold denied that he had any drugs or guns, Phillips asked Ringold if he could take a look in the car. Ringold said that he could do so. Ringold opened the side door of the Blazer, but Phillips asked if he could look in the hatchback at the rear of the car.

-4-

Either Ringold or Brown, who had returned to the car from the service station, pushed a button to unlock the back of the Blazer. Once the hatchback was open, Phillips found two large suitcases and asked Ringold if he could look inside them. One of the suitcases was locked, and when Ringold indicated that he did not have a key Phillips asked if he could break the lock. Ringold said "yes." When Phillips cut the lock and opened the suitcase he found a large bale of marijuana inside. Further searching revealed three more large bales of marijuana.

After the ensuing criminal charges were brought against both defendants, each moved to suppress the evidence of the marijuana. Denying that motion, the district court found that Phillips' encounter with defendants did not amount to a seizure and that they had voluntarily consented to the search of the Blazer. Defendants appeal that ruling.

Standard of Review

In reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the district court's determination (United States v. Williams, 271 F.3d 1262, 1266 (10th Cir. 2001)). To that end we will uphold the district court's factual findings unless they are clearly erroneous (id.).

By contrast, the ultimate determination of whether the police action at issue was reasonable under the Fourth Amendment is a question of law that we review de novo (id.). Although the proponent of a motion to suppress bears the burden

of proof in general terms (United States v. Moore, 22 F.3d 241, 243 (10th Cir. 1994), citing Rakas v. Illinois, 439 U.S. 128, 130-31 n. 1 (1978)), whenever the government relies on a defendant's consent to validate a search it bears the burden of proving the consent valid (United States v. Pena, 143 F.3d 1363, 1366 (10th Cir. 1998)).

Voluntariness of the Encounter

As United States v. Torres-Guevara, 147 F.3d 1261, 1264 (10th Cir. 1998)(internal quotation marks and citation omitted) has recounted:

> This court has previously identified three categories of police-citizen encounters: (1) consensual encounters which do not implicate the Fourth Amendment; (2) investigative detentions which are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity; and (3) arrests, the most intrusive of Fourth Amendment seizures and reasonable only if supported by probable cause.

Defendants argue that their encounter with Phillips was an investigative detention that was not supported by reasonable suspicion in violation of the Fourth Amendment.

Over a decade ago Florida v. Bostick, 501 U.S. 429, 439 (1991) reconfirmed the operative standard that still applies today:

> We adhere to the rule that, in order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.

That inquiry is an objective one. As <u>United States v. Laboy</u>, 979 F.2d 795, 798

(10th Cir. 1992), citing <u>Bostick</u>, has explained:

>As long as a reasonable innocent person, as opposed to a person
>knowingly carrying contraband, would feel free to leave, such
>encounters are consensual and need not be supported by reasonable
>suspicion of criminal activity.

We have identified various factors as relevant to the <u>Bostick</u> totality-of-the-

circumstances approach. <u>United States v. Hill</u>, 199 F.3d 1143, 1147-48 (10th Cir.

1999) has reiterated a previously-provided nonexhaustive list:

>the threatening presence of several officers; the brandishing of a
>weapon by an officer; some physical touching by an officer; use of
>aggressive language or tone of voice indicating that compliance with
>an officer's request is compulsory; prolonged retention of a person's
>personal effects such as identification and plane or bus tickets; a
>request to accompany the officer to the station; interaction in a
>nonpublic place or a small, enclosed place; and absence of other
>members of the public.

But as <u>Hill</u>, <u>id</u>. at 1148 made clear, no single factor can dictate whether a seizure

occurred. Accordingly, "[w]e have steadfastly refused to view any one of these

factors as dispositive" (<u>id</u>., quoting <u>United States v. Glass</u>, 128 F.3d 1398, 1406

(10th Cir. 1997)).

Defendants do not dispute that objective and fact-specific approach--they

argue instead that the totality of the circumstances demonstrates that a reasonable

person in either defendant's position would not have felt free to terminate the

encounter or to ignore Phillip's questions. We disagree under the controlling

caselaw. Considering all of the circumstances in those terms, we conclude that the interaction between Phillips and defendants amounted to a consensual encounter that did not implicate the Fourth Amendment and that defendants' consent to the search of their car was voluntary.

It is undisputed that Phillips and Walt approached defendants after their vehicle was already stopped and in the public space outside the service station, in full view of other patrons. Although Phillips and Walt were in uniform and armed, both were roughly the same physical size as Brown and Ringold and neither touched or brandished his weapon during the encounter. While Phillips had parked his police vehicle at an angle rather than within one of the nearby parking stalls, defendants do not challenge the district court's finding **[Opinion at 3-4]** that the patrol car was not blocking defendants or their car from leaving the station. Although Phillips' questioning during the course of the encounter turned from the weather to the subject of illegal drugs and guns, the district court also found **[Opinion at 4]** that Phillips was polite and that the conversation was friendly in tone.

Defendants urge that the approach mandated by Bostick requires that we consider the interaction between the officers and defendants on Interstate 70 in determining the nature of the service station encounter. Although we agree that such an approach comports with the totality-of-the-circumstances concept, we

find that earlier interaction does not convert the later meeting into a nonconsensual encounter.

Unlike the archetypical highway drug seizure that begins with a stop for some traffic violation, Phillips and Walt did not pull Defendants over on the Interstate. Rather defendants themselves chose to leave the highway and voluntarily stopped their vehicle at the service station. That distinction is key because, as Bostick, 501 U.S. at 434 has quoted from Terry v. Ohio, 392 U.S. 1, 19 n. 16 (1968)):

> Obviously, not all personal intercourse between policemen and citizens involves "seizures" of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred.

Thus the fact that Phillips drove past defendants on the Interstate without pulling them over, before his ensuing turnaround and approach to them at the service station, did not amount to a show of authority that would indicate to a reasonable person that he had to comply with Phillips' inquiries.

Likewise, the fact that Phillips parked the patrol car at an angle rather than in one of the marked parking spots was not a coercive act that would communicate to a reasonable person that he could not decline Phillips' questioning. As found by the district court, **[Opinion at 3-4]** the patrol car was well back and to the side of defendants' vehicle and was not impeding their path

-9-

in any way.[1]  Further, Phillips then approached defendants' car in a nonthreatening manner after buying a soft drink.  We cannot conclude that Phillips' askew parking choice imbued the ensuing encounter with a heightened sense of coercion that would have communicated to a reasonable person that he was not free to terminate the encounter.

Next defendants contend that a reasonable person would not have felt free to decline Phillips' questioning because the officers positioned themselves in such a way that Ringold was encircled between them, the gas pump and his vehicle.  But observing that "the location of the encounter is but one factor in the totality of the circumstances," Hill, 199 F.3d at 1148 (citing Bostick, 501 U.S. at 439 and United States v. Little, 18 F.3d 1499, 1504 (10th Cir. 1994)(en banc)) concluded that encounters in even more cramped and confined environments such as buses or train cars could be consensual.  Here, although Phillips and Walt were standing on either side of Ringold and the gas pump, nothing prevented Ringold from simply entering his vehicle and driving away.

Defendants also argue that the encounter constituted an investigative detention because Phillips asked Ringold potentially incriminating questions about transporting drugs and guns.  But United States v. Little, 60 F.3d 708, 712

---

[1] Brown seeks to call United States v. Robinson, No. 99-10018-01, 1999 WL 358742, at *1 (D. Kan. May 12, 1999) to his aid.  But Robinson is clearly distinguishable because of its express finding that the officer there intentionally parked his cruiser so as to block the path of the defendant's vehicle.

(10th Cir. 1995)("Little II") has made clear that the mere fact that officers ask incriminating questions is not relevant to the totality-of-the-circumstances inquiry--what matters instead is "the manner" in which such questions were posed. As Little II, id. (internal quotation marks omitted) said:

> Accusatory, persistent, and intrusive questioning can turn an otherwise voluntary encounter into a coercive one.

In contrast to Little II, here there is no evidence, let alone a district court finding, that Phillips' questioning of Ringold reached that level of implied coercion. To be sure, the conversation moved from innocuous weather discussion and travel-related inquiries to questions of an incriminating nature about illegal drugs and guns. But even the latter questions were not worded or delivered in such a manner as to indicate that compliance with any officer directives (or even inquiries) was required. Defendants do not dispute that the officers remained polite throughout the encounter, and Brown himself acknowledged that the officers did not display an intimidating or coercive demeanor.

Finally, defendants point out that they were never advised during the encounter that they could decline to answer Phillips' questions or that they were free to leave. To be sure, the lack of notification of an individual's right to refuse consent may be a relevant fact to consider, but as United States v. Broomfield, 201 F.3d 1270, 1275 (10th Cir. 2000)(citation omitted) has explained:

> Moreover, there is nothing unlawful about the practice of

approaching individuals and asking them potentially incriminating questions, and there is no per se rule requiring law enforcement officials to specifically advise those individuals they do not have to answer police questions.

It might perhaps be contended that all of this is unduly formalistic and does not give sufficient play to the natural tendency of any person--the wholly innocent individual as well as someone transporting contraband--to feel somewhat cowed when a law enforcement officer approaches and begins to ask questions, particularly those probing into the possibility of illegal activity.  But even apart from the difficulties that a more restrictive approach would pose for entirely legitimate law enforcement efforts, it is too late in the day--the law is too firmly established--to convert that notion into a more demanding test for the legality of a noncustodial encounter with an officer.

In sum, the interaction between Phillips and defendants, when viewed in its totality, falls clearly within the lines of a consensual encounter as drawn by Supreme Court precedent and our own prior rulings.  Under all of the circumstances here, the officers' conduct would not have conveyed to a reasonable person that "he was not free to decline the officers' requests or otherwise terminate the encounter" (Bostick, 501 U.S. at 439).  As such, the encounter was consensual rather than an investigative detention and therefore did not constitute a seizure within the meaning of the Fourth Amendment.

Voluntariness of Consent to Search

It has long been established that an officer may conduct a warrantless search consistent with the Fourth Amendment if the challenging party has previously given his or her voluntary consent to that search (see, e.g., Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); Pena, 143 F.3d at 1365-66). Here, although defendants argue that their consent to the car search could not be viewed as voluntary because it was tainted by an illegal investigatory detention, our conclusion that defendants' encounter with Officer Phillips was not an investigatory detention torpedoes that contention.

But it is worth adding that on the evidence here, defendants' consent to the search was voluntary in all events. Ringold's affirmative consent, given orally to Phillips at each stage of the search, was unequivocal. Although Brown claimed not to have consented to the search, the district court found that he nodded his head affirmatively **[Opinion at 5]**--and its finding must be credited. Furthermore, Brown was present at the vehicle during the search, knew that it was happening and made no attempt to stop it.

So the government has another string to its bow. We also hold that defendants' consent to the search of their car was both voluntary and valid.

Conclusion

For the foregoing reasons, we AFFIRM the district court's decision denying each defendant's motion to suppress.