**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 17 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

WESLEY BERNARD POKE, JR.,

    Defendant-Appellant.

No. 03-3043
(District of Kansas)
(D.C. No. 02-CR-40008-01-SAC)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, **MURPHY**, and **O'BRIEN**, Circuit Judges.

After examining the briefs and appellate record, this court has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## I.   Introduction

Appellant, Wesley Poke, Jr., was indicated on one count of possession with intent to distribute cocaine and one count of conspiracy to possess with the intent to distribute cocaine. Poke filed a motion to suppress evidence seized during a roadside search of his vehicle. The motion was denied and Poke entered a conditional guilty plea to the conspiracy charge. *See* Fed. R. Crim P. 11(a)(2). He was sentenced to sixty-three months' imprisonment and four years' supervised release. Polk then brought this appeal challenging the denial of his suppression motion. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **affirm** the denial of Poke's motion to suppress.

## II.   Background

On December 2, 2001, Clint Epperly, a trooper with the Kansas Highway Patrol, was patrolling the southbound lanes of Interstate 35 in Lyon County, Kansas. Trooper Epperly observed two vehicles he believed were traveling together. Epperly attempted to check the registration of one vehicle, a Ford Expedition, but could not see a license plate or temporary registration tag. Under Kansas law, vehicles must display a current license plate or tag. *See* Kan. Stat. Ann. § 8-133. Epperly, therefore, stopped the Expedition. As he approached the vehicle with a flashlight, Epperly saw what appeared to be a current Missouri temporary registration tag taped inside the rear window. Epperly testified at the

-2-

suppression hearing that he was not able to see even an outline of the temporary tag until he was close to the Expedition. He attributed this to the dark window tinting.

The Expedition was driven by Poke's co-defendant, Shawnea Brooks; Poke was the passenger. Epperly identified Brooks and Poke from their driver's licenses. When Brooks indicated that Poke was the owner of the vehicle, Epperly asked Poke for his registration and proof of insurance. Because Poke was unable to produce proof of insurance, Epperly asked Poke to come to his patrol car so he could determine whether Poke was the owner of the vehicle. Epperly requested the dispatcher to determine if the driver's licence of both Poke and Brooks were valid and whether there were any outstanding warrants. Epperly also ran a criminal history check on both Poke and Brooks.

After the computer check was completed, Epperly returned Poke's documents to him and advised him that he was free to leave. Epperly then asked Poke if he would answer a few additional questions; Poke agreed. Epperly asked Poke whether he was transporting firearms, drugs, or large amounts of currency. Poke responded in the negative and Epperly requested permission to search the vehicle. Poke replied, "That's fine, yes." During the search of the Expedition, officers discovered cocaine in a bag on the back seat. Poke and Brooks were arrested.

After the two-count indictment was returned, Poke filed a motion to suppress the evidence seized during the search of the Expedition and all statements made by him. Poke argued, *inter alia* , that the detention exceeded the scope of the initial stop and thus was unreasonable under the Fourth Amendment. He also argued that his consent to search the vehicle was not given voluntarily. At the motion hearing, Epperly testified that he continued with the traffic stop even after he saw the temporary registration tag affixed to the back of the Expedition because the tag was not "clearly visible." *See* Kan. Stat. Ann. § 8-133 ("Every license plate shall at all times be securely fastened to the vehicle to which it assigned . . . in a place and position to be clearly visible, and shall be maintained free from foreign materials and in a condition to be clearly legible.").

The district court denied the suppression motion, concluding that the continued detention and questioning of Poke was proper because Epperly had an "objectively reasonable articulable suspicion" that a traffic violation had occurred or was occurring. *United States v. Soto* , 988 F.2d 1548, 1554 (10th Cir. 1993). The court also concluded that the questions asked by Epperly were within the scope of the stop and that Poke voluntarily consented to the search of the vehicle. [1]

---

[1]We admonish defense counsel for violating 10th Cir. R. 28.2(A)(1) by failing to attach to his brief a copy of the district court's written order denying Poke's suppression motion.

**III. Discussion**

In this appeal, Poke does not challenge the lawfulness of the initial stop but argues, instead, that once Epperly determined that the Expedition had a temporary registration tag the continued detention and questioning was unconstitutional. Poke also reasserts the argument that he did not voluntarily consent to the search of the vehicle.

*A. Standard of Review*

When this court reviews the denial of a motion to suppress, we view the evidence in the light most favorable to the government and accept the district court's factual findings unless they are clearly erroneous. *United States v. Price*, 265 F.3d 1097, 1104 (10th Cir. 2001). The ultimate determination of whether a traffic stop was reasonable under the Fourth Amendment, however, is a question of law reviewed *de novo*. *Id*. The question of whether consent to search was given voluntarily is one of fact based on the totality of the circumstances and the district court's ruling is reviewed for clear error. *United States v. Sanchez-Valderuten*, 11 F.3d 985, 989-90 (10th Cir. 1993). The government, however, bears the burden of demonstrating that the defendant's consent was voluntary. *United States v. Ringold*, 335 F.3d 1168, 1171 (10th Cir. 2003).

B.      *Reasonableness of Traffic Stop*

Trooper Epperly testified that he initially stopped the Expedition because he believed it did not have a registration tag or license plate. Poke concedes that the initial stop was valid but argues that once Trooper Epperly determined that a temporary registration tag was affixed to the back window of the vehicle, the continued detention exceeded the scope of the stop. Poke relies on *United States v. McSwain*, 29 F.3d 558, 561 (10th Cir. 1994). We agree with the government, however, that *McSwain* does not control the outcome of this case.

In *McSwain*, the highway patrol officer was able to see the temporary registration tag posted in the rear window of the vehicle but "stopped the vehicle to verify the validity of the temporary sticker." *Id*. at 560. The officer approached the vehicle and satisfied himself that the temporary sicker was valid and had not expired. *Id*. The officer then had no further grounds on which to detain the occupants of the vehicle. *Id*. at 561. Accordingly, this court reversed the denial of the motion to suppress, concluding that the initially valid stop evolved into an unreasonable detention. *Id*. at 561-62. This court distinguished the situation in *McSwain* from those "situations in which the officer, at the time he or she asks questions or requests the driver's license and registration, still has some objectively reasonable articulable suspicion that a traffic violation has occurred or is occurring." *Id*. at 561 (citations and quotations omitted).

This case involves the situation not present in *McSwain*. Kansas law requires that all vehicle registrations be "clearly visible" and "clearly legible." Kan. Stat. Ann. § 8-133. The improper display of a license plate or temporary registration tag is a violation of Kansas law. *State v. Hayes*, 660 P.2d 1387, 1389 (Kan. Ct. App. 1983) (concluding "that the display of an illegible or obscured vehicle tag is a violation of K.S.A. 8-133 even if the vehicle is duly licensed in another state"). Although Poke argues that Epperly did not have reasonable suspicion to believe that the temporary tag was displayed improperly, he does not directly challenge the district court's finding that Officer Epperly could not see the Expedition's temporary tag as it traveled along the interstate. We therefore reject Poke's argument and conclude that Officer Epperly properly detained Poke because he continued to have an objectively reasonable suspicion that a traffic violation was occurring, albeit not the violation for which he initially stopped the Expedition. The continued detention and questioning of Poke was not unreasonable under the Fourth Amendment.[2]

C. *Consent to Search the Vehicle*

Poke also challenges the voluntariness of the consent he gave to search the Expedition. Poke contends that his consent was not voluntary because more than

---

[2]In this appeal, Poke does not argue that Trooper Epperly's questioning exceeded the scope of the stop.

one officer was present when Epperly asked for consent to search the Expedition, Epperly asked for consent while Poke was seated in the patrol car, and Epperly did not specifically inform him that he could decline to give his consent to the search. According to Poke, he was "surrounded by law enforcement officers in a very small confined space, in a dark, isolated location."

We conclude that the district court's finding that Poke voluntarily consented to the search is not clearly erroneous. Notwithstanding Poke's arguments, the record provides ample support for the district court's ruling. Before asking for consent, Epperly returned Poke's documents to him and specifically informed him that he was free to leave. Further, Poke himself concedes that Epperly did not physically harass him, speak in a threatening tone of voice, or brandish his weapon.

## III.    Conclusion

The order of the district court denying Poke's motion to suppress is **affirmed** .

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge