**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 31, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

KENNETH RAYBURT BLACKWELL,

Defendant - Appellant.

No. 05-6170
(D. Ct. No. CR-04-145-M)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before, **TACHA**, Chief Circuit Judge, **HARTZ**, and **TYMKOVICH**, Circuit Judges.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

On March 30, 2005, a jury convicted Defendant-Appellant Kenneth R. Blackwell of four counts of possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). He was sentenced to 120 months' imprisonment for each count, to be

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

served concurrently. Prior to trial, Mr. Blackwell moved to suppress oral and written statements he made to Federal Bureau of Investigation ("FBI") agents. The District Court denied the motion. Mr. Blackwell now appeals that ruling. We exercise jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

On June 16, 2004, six FBI agents executed a search warrant at the residence Mr. Blackwell shared with Natasha Algood and Sabrina Cravens. Finding Mr. Blackwell not at home, the agents proceeded to interview the two women regarding their involvement in possessing and distributing child pornography, Mr. Blackwell's whereabouts, and whether they knew if Mr. Blackwell was involved with child pornography. The women implicated Mr. Blackwell and said that he could be found at his place of employment, the Lincoln Plaza Hotel in Oklahoma City.

Three of the FBI agents left the residence and drove to the Lincoln Plaza Hotel to interview Mr. Blackwell. When they arrived, the agents asked the hotel manager whether they could speak with Mr. Blackwell in private. The manager said they could use a vacant conference room on the second floor of the hotel; the agents waited while the manager located Mr. Blackwell and informed him that federal law enforcement officers wished to speak with him.

When Mr. Blackwell arrived, the agents informed him that they were FBI agents, that they had executed a search at his home, and that they wanted to ask him some questions. They also advised Mr. Blackwell that he did not have to talk to them if he did

not want to, but that Ms. Algood and Ms. Cravens had made some serious allegations about his alleged possession of child pornography. Mr. Blackwell agreed to speak with them and followed the agents to the conference room. Only two of the agents went into the conference room; the third agent waited outside. Prior to asking Mr. Blackwell any questions, the agents told him that he was not under arrest, and again informed him that he did not have to speak with them if he did not want to. The agents then asked Mr. Blackwell a series of questions, during which Mr. Blackwell admitted to possessing child pornography. At the end of the interview, he memorialized his admission in a written statement.

Following Mr. Blackwell's admissions, Agent Cami Newey believed that there was probable cause to make an arrest and called the office of the United States Attorney for the Western District of Oklahoma. The Assistant United States Attorney advised Agent Newey that Mr. Blackwell should be arrested. Subsequently, the agents informed Mr. Blackwell of his *Miranda* rights and formally arrested him.

Prior to trial, Mr. Blackwell moved to suppress both his oral and written confessions as fruit of an unconstitutional detention.[1] The District Court denied the

---

[1]Specifically, Mr. Blackwell argued that the statements were made as a result of an unconstitutional detention "in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments." Since Mr. Blackwell specifically invoked his Fifth Amendment right, the District Court treated the motion as one to suppress statements as taken in violation of *Miranda v. Arizona*, 384 U. S. 436 (1966). On appeal, however, Mr. Blackwell only presses a Fourth Amendment claim—that the interview in the conference room constituted a warrantless arrest without probable cause. The Government does not contend that this issue was not raised below.

motion, concluding that Mr. Blackwell was not in custody when he confessed and that his confession was otherwise voluntary. Mr. Blackwell now challenges the District Court's determination that he was not in custody during the interview.

## II. DISCUSSION

A.      Standard of Review

In reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government and accept the district court's factual findings unless clearly erroneous. *United States v. Gay*, 240 F.3d 1222, 1225 (10th Cir. 2001); *United States v. Wallace*, 429 F.3d 969, 974 (10th Cir. 2005). We review de novo "all the relevant circumstances to determine whether an interaction between an individual and a law enforcement officer is a consensual encounter that does not implicate the Fourth Amendment." *United States v. Abdenbi*, 361 F.3d 1282, 1291 (10th Cir. 2004).

B.      Motion to Suppress

Mr. Blackwell argues that the District Court erred in denying his motion to suppress because the interview with FBI agents at the Lincoln Plaza Hotel constituted a warrantless arrest without probable cause in violation of the Fourth Amendment. Mr. Blackwell claims that a reasonable person would not feel free to leave the conference room because he was isolated and the agents had visible weapons. He also points out that by their own admission, the FBI agents did not have probable cause to detain him at the time of the interview. The Government counters that the interview constituted a consensual encounter that does not implicate the Fourth Amendment.

The Fourth Amendment protects individuals from unreasonable searches and seizures by the government. It is axiomatic that not all questioning by police officers involves a seizure. *See Florida v. Bostick*, 501 U.S. 429, 434 (1991). An encounter is consensual "[s]o long as a reasonable person would feel free 'to disregard the police and go about his business.'" *Id.* (quoting *California v. Hodari D.*, 499 U.S. 621, 628 (1991)). The Fourth Amendment is triggered only when an encounter loses its consensual nature. *Id.* A seizure has occurred when an officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)).

Determining whether an encounter with law enforcement officials is consensual or constitutes a seizure requires a court to consider the totality of circumstances to determine whether "the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Id.* at 439. This Court has identified several factors that may be considered when determining whether an encounter is consensual, including:

> the threatening presence of several officers; the brandishing of a weapon by an officer; some physical touching by an officer; use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory; prolonged retention of a person's personal effects such as identification and plane or bus tickets; a request to accompany the officer to the station; interaction in a nonpublic place or a small, enclosed place; and absence of other members of the public.

*United States v. Ringold*, 335 F.3d 1168, 1172 (10th Cir. 2003). None of the factors is dispositive; nor is the list exhaustive of the factors that may be relevant to the inquiry. *Id.*

The District Court found that when the agents arrived at the hotel, they were not wearing body armor, nor were their weapons visible. This finding is not clearly erroneous. When Mr. Blackwell met the agents, they advised him that he did not have to speak with them, though Mr. Blackwell agreed to do so. He then voluntarily followed the agents to the second-floor conference room. Only two agents questioned him, while one waited outside; the conference room door remained unlocked. Before the interview began, the agents again informed Mr. Blackwell that he did not need to speak with them and told him that he was not under arrest. The court found that the agents acted in a professional and respectful manner and credited the agents' testimony that Mr. Blackwell appeared comfortable during the interview. Mr. Blackwell does not challenge these factual findings. Based on the totality of the circumstances, we conclude that a reasonable person would have felt free to terminate the encounter and leave the scene. *See United States v. Sanchez*, 89 F.3d 715, 718 (1996). The encounter was therefore consensual and, accordingly, the District Court did not err in denying Mr. Blackwell's motion to suppress.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the District Court's order denying Mr.

Blackwell's motion to suppress.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Chief Circuit Judge