UNITED STATES of America,
Plaintiff–Appellee,

v.

Daniel Clark SUMMERS,
Defendant–Appellant.

No. 00–30083.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 6, 2001

Submission Withdrawn Sept. 6, 2001

Resubmitted Oct. 1, 2001[1]

Filed Oct. 12, 2001

**1.** This appeal was taken under submission following oral argument on August 6, 2001. On September 6, 2001, the panel issued an order withdrawing submission pending the outcome in *United States v. Tighe,* 266 F.3d 1187 (9th Cir.2001).

Kenneth W. Sharaga, Seattle, Washington, for the defendant-appellant.

James T. Chou, Assistant United States Attorney, Seattle, Washington, for the plaintiff-appellee.

Before: NOONAN, TASHIMA and TALLMAN, Circuit Judges.

TALLMAN, Circuit Judge:

Daniel Clark Summers was convicted, after a jury trial, on one count of being a felon in possession of a firearm under 18 U.S.C. §§ 922(g)(1) & 924(e) and one count of possession of an unregistered sawed-off shotgun under 26 U.S.C. §§ 5861(d) & 5871. Summers appeals the district court's denial of his motion to suppress evidence and the district court's jury instructions. He also challenges the constitutionality of 18 U.S.C. § 924(e) in light of the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I

At approximately 10:00 p.m. on April 15, 1999, Police Officer Steven Barclift observed Summers near a Goodwill drop station in the parking lot of a grocery store in Tumwater, Washington. The Goodwill drop station was a semi-trailer, which was closed and unattended. Officer Barclift observed Summers carrying a box from the trailer to his car which was parked in front of, and at a slight angle to, the trailer. Summers' headlights shone onto the front of the trailer. Officer Barclift drove his police car past Summers' car and parked perpendicular to it without blocking Summers' rearward path.

While Officer Barclift parked, Summers walked quickly to his car, placed the box on the hood, and approached the police car. Summers asked Officer Barclift, "What can I do for you?," in a tone that Officer Barclift described as "facetious" and "confrontational." He asked Summers what he was doing. Summers stated that he was "just exchanging some items."

Officer Barclift asked Summers for identification and he responded that he did not have any. Summers contends that he informed Officer Barclift during their conversation that Officer Barclift knew Summers from a previous encounter. Officer Barclift, however, did not recognize him.

Next, Officer Barclift asked Summers if the vehicle belonged to him. When Summers answered affirmatively, Officer Barclift asked him if he had any paperwork in the car that would identify him. In response, Summers walked to the driver's side of the car, sat down, and opened the glove compartment. Officer Barclift followed Summers to the driver's side of the car.

While Summers was retrieving the paperwork, Officer Barclift, out of concern for his own safety, illuminated the interior of the car with his flashlight. Officer Barclift noticed the butt of a shotgun on the floorboard of the front passenger side. Approximately ninety seconds passed from the time Officer Barclift exited his car to the time he saw the weapon. Officer Barclift then ordered Summers to step out of the car. Because Summers did not immediately comply, Officer Barclift again ordered him out of the car. When Summers stood up, Officer Barclift asked him to face the car.

Summers then struggled to get away from Officer Barclift and fled on foot, dropping incriminating items from his pockets on the way. A few minutes later, Officer Barclift and Officer LaFountain, who had been called for backup, apprehended Summers in the parking lot. Shotgun shells containing rifle slugs or .00 buckshot and a set of scales were found in Summers' pockets. The weapon recovered was determined to be an unregistered sawed-off shotgun.

Summers was indicted on one count of being a convicted felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) & 924(e), and one count of possession of an illegal weapon, in violation of 26 U.S.C. §§ 5861(d) & 5871. He moved to suppress the shotgun arguing that his detention constituted an unlawful seizure under the Fourth Amendment. The district court denied the motion to suppress on the ground that Officer Barclift had reasonable, articulable suspicion to conduct an investigatory stop of Summers and to shine his flashlight inside the car for safety reasons. The case proceeded to trial.

At the conclusion of the trial Summers requested that the district court instruct the jury that the government must prove that Summers "knew of the specific features that subjected [the shotgun] to regulation; namely, that it had an overall length of less than 26 or barrels of less than 18." The district court rejected this instruction, instead adopting the government's proposed instruction stating that the government must prove that "the defendant knowingly possessed a weapon made from a shotgun, modified to have an overall length of less than 26 inches or a barrel of less than 18 inches in length...." The district court also instructed the jury that "it is not necessary that the government prove that the defendant knew the weapon he possessed was illegal." Summers objected to both instructions, arguing that, in combination, the instructions would confuse the jury. The district court overruled defendant's objections. The jury convicted Summers of both counts. Summers timely appeals.

## II

### A

■ We review a district court's denial of a motion to suppress evidence de novo and its factual findings for clear error. *See United States v. Garcia,* 205 F.3d 1182, 1186 (9th Cir.), *cert. denied,* 531 U.S. 856, 121 S.Ct. 138, 148 L.Ed.2d 90 (2000).

■ For purposes of the Fourth Amendment, a seizure occurs when an officer, through some form of physical force or show of authority, restrains the liberty of a citizen. *See Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). Such restraint occurs if, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Kim,* 25 F.3d 1426, 1430 (9th Cir.1994) (citations and quotations omitted). When an encounter is voluntary, no constitutionally protected right is implicated. *Bostick,* 501 U.S. at 434, 111 S.Ct. 2382. If, however, the stop is involuntary, it must be supported by reasonable suspicion based upon articulable facts that criminal activity is afoot. *United States v. Kerr,* 817 F.2d 1384, 1386 (9th Cir.1987).

In *Kim,* we held under similar circumstances that an encounter between law enforcement officers and suspects did not rise to the level of an investigatory stop. Drug Enforcement Administration ("DEA") agents in that case had been tipped that a Korean male would be carrying a suitcase full of methamphetamine in a certain Honolulu neighborhood. 25 F.3d at 1427. An agent in the neighborhood spotted two men with a suitcase climbing into a parked car, one of whom fit the description given by the informant. *Id.* Another agent parked next to the defendant's car, blocking its egress. *Id.* The agent approached the car, identified himself as a DEA agent, and asked the occupants for identification. *Id.* The defendant, after initially lying about his identity,

eventually gave the agent his real name. *Id.* The agent then asked to search the contents of the suitcase. *Id.* The defendant consented and went to the trunk of the car to retrieve the suitcase. *Id.* It was empty. *Id.* at 1427–29.

While at the trunk of the car, the agent noticed an object protruding from the defendant's pocket. *Id.* at 1429. The agent asserted that he merely pointed to the object, but the defendant contended that the agent touched the object through his pocket. *Id.* The agent requested that the defendant remove the object, which he did. *Id.* It was a container holding methamphetamine. *Id.*

We held in *Kim* that the detention of the defendant did not rise to the level of an investigatory stop because the agent did not act forcefully or aggressively toward the defendant. *Id.* at 1430. Moreover, the interaction did not implicate the Fourth Amendment in the same manner as do traffic stops, because the car was parked. *Id.* Thus, "[the] disparity between automobile and pedestrian stops dissipates and the driver is not clearly stopped in any sense *ab initio*, except of his own volition." *Id.*

■ *Kim* supports the conclusion that the interaction in this case was voluntary. As in *Kim,* Summers' car was parked and was only partially blocked. Nothing prevented him from leaving the scene on foot. Officer Barclift, like the agent in *Kim,* requested identification from Summers. In *Kim,* the agent did not stop once he received proper identification from the defendant, which is arguably more intrusive than Officer Barclift's actions in this case. Officer Barclift never received proper identification from Summers and continued to question him, asking for the paperwork on the car as a way to identify Summers. *See Bostick,* 501 U.S. at 434, 111 S.Ct. 2382 (holding "that a seizure does not occur simply because a police officer approaches an individual and asks a few questions."). Finally, Officer Barclift drove up to the trailer without activating his lights or siren, and Summers approached him immediately. These facts support the conclusion that the interaction was voluntary, not coerced.

■ Even if we were to find that the late night encounter was an investigatory stop, however, the "stop" was supported by reasonable and articulable suspicion that Summers had committed, or was about to commit, a crime. *See Kim,* 25 F.3d at 1431. Summers' questionable explanation that he was "exchanging things" when asked what he was doing near a closed Goodwill collection station late at night provided a reasonable basis for the patrol officer's suspicion that criminal activity was afoot. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Accordingly, the district court's denial of Summers' motion to suppress is affirmed.

**B**

■ Summers contends the district court erred in instructing the jury regarding the knowledge element of 26 U.S.C. § 5861(d). We review de novo whether the jury instructions accurately define the elements of a statutory offense. *See United States v. Hicks,* 217 F.3d 1038, 1045 (9th Cir.), *cert. denied,* 531 U.S. 1037, 121 S.Ct. 627, 148 L.Ed.2d 536 (2000). We review for abuse of discretion the district court's "ultimate formulation" of the jury instructions. *See id.*

■ In this case, the government was required to prove beyond a reasonable doubt that Summers knew the shotgun found in his car had an overall length of less than 26 inches or a barrel length of less than 18 inches. *See* 26 U.S.C.

§§ 5845(a) & 5861(d) (defendant must know that the unregistered weapon he or she possessed has features that make its possession illegal); *Staples v. United States,* 511 U.S. 600, 619, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994); *United States v. Gergen,* 172 F.3d 719, 724 (9th Cir.1999).

The district court's specific instruction on the intent element of § 5861(d) was that the government must prove that "the defendant knowingly possessed a weapon made from a shotgun, modified to have an overall length of less than 26 inches or a barrel of less than 18 inches in length...." This instruction is an accurate statement of the intent requirement for possession of a sawed-off shotgun under § 5861(d). Summers argues, however, that the instruction is misleading because the jury could have understood from this instruction that the government was only required to prove that Summers possessed a weapon made from a shotgun, not that he knew the specific characteristics of the shotgun.

■■■ Summers also contends that a separate instruction given by the district court, stating that the government need not prove that Summers knew the shotgun was illegal, confused the jury as to the appropriate mental state required to convict him. He asserts that this instruction supported the likelihood that the first instruction was misunderstood.

The first instruction specifically addressed the facts pertinent to Summers' mental state. The second instruction correctly stated that the government was not required to prove that Summers knew the shotgun was illegal-that the shotgun was subject to registration and was not registered. Therefore, the district court's jury instructions on the intent requirement were not erroneous. Although the district court could have more artfully formulated the first instruction, there is no evidence that the instruction caused any confusion, and a reasonable interpretation of the instruction leads to a correct statement of the law.[2] The district court did not abuse its discretion by giving the instructions at issue.

## C

■■■ The final issue raised by Summers is whether the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), is facially unconstitutional. Summers contends that because the ACCA only requires the government to prove a defendant's prior convictions by a preponderance of the evidence, it violates the principles laid down in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Under *Apprendi,* Summers argues that the fact of his prior convictions must be proved by a jury beyond a reasonable doubt. We review for plain error. *See United States v. Nordby,* 225 F.3d 1053, 1060 (9th Cir. 2000).

■■■ "Under the current state of the law, the Constitution does not require prior convictions that increase a statutory penalty to be charged in the indictment and proved before a jury beyond a reasonable doubt." *United States v. Tighe,* 266 F.3d 1187, 1190 (9th Cir.2001) (citing *United States v. Pacheco–Zepeda,* 234 F.3d 411, 414 (9th Cir.), *cert. denied,* —— U.S. ——,

---

**2.** While not material to our holding, it is important to note that the government incorrectly asserts that the language used in the first instruction at issue is "identical" to Ninth Circuit Model Criminal Jury Instruction 9.31. In fact, Instruction 9.31 states, in pertinent part: "First, the defendant knowingly possessed [e.g., a shotgun having a barrel or barrels of less than 18 inches in length]." We think the language proposed by the Model Instruction is clearer and preferable.

121 S.Ct. 1503, 149 L.Ed.2d 388 (2001)).[3] *Tighe* addressed the constitutional challenge to the facial validity of the ACCA in the context of prior juvenile adjudications. Summers makes the same challenge regarding proof of prior adult convictions. We agree with *Tighe*, and, to the extent there is any question regarding the analysis as to adult adjudications, we also hold the ACCA facially constitutional.

**AFFIRMED.**

**3.** The "prior convictions" exception was specifically carved out of *Apprendi* in light of the Court's decision in *Almendarez–Torres v. United States,* 523 U.S. 224, 239, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). *See Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348 ("*Other than the fact of a prior conviction,* any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (Emphasis added)). *Almendarez–Torres* expressly rejected the claim that prior convictions which increase the maximum penalty must be stated as separate elements in the indictment and proved to a jury beyond a reasonable doubt. *Almendarez–Torres,* 523 U.S. at 239, 118 S.Ct. 1219.