

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0936-07, PD-0937-07

### STATE OF TEXAS

### v.

### CANDELARIO GARCIA-CANTU, Appellee

### ON APPELLEE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE NINTH COURT OF APPEALS
### MONTGOMERY  COUNTY

KELLER, P.J., filed a dissenting opinion in which KEASLER and HERVEY, JJ., joined.

To understand this case, we must first understand the nature of the trial court's ruling.

Appellee's complaint at trial was that Officer Okland's approach of the vehicle constituted a "stop"

without reasonable suspicion in violation of the Fourth Amendment:

> At this point, Your Honor – well, we're objecting to the stop, and the approaching vehicle, at least the objection made in this case.  That's all we need to argue about here today, if they had a valid reason for stopping and making their investigation and search that they conducted.  Anything that happened afterwards is sort of irrelevant to our argument here.

When the State sought to introduce the video of the encounter, appellee reiterated the nature of his

complaint as relating only to the very beginning: "No objection, just that all we need is the first frame, or – yeah, the first frame to show where the vehicle was parked, and I have no objection to that." In sustaining a later objection at the hearing, the trial court confirmed that the suppression issue was limited to the initial contact between Officer Okland and appellee:

> [DEFENSE COUNSEL]: Objection, your honor, to any testimony that followed the stop. What we're questioning is the stop, and not anything that happened afterwards.
>
> [THE COURT]: Yeah, that will be sustained.

The Court recites ten circumstances that it believes support the trial court's ruling, but only one of those circumstances comes close to supporting a finding that the initial contact between Officer Okland and appellee constituted the onset of a detention for Fourth Amendment purposes. Officer Okland's subjective decision to investigate, the time of day (very early morning), the use of a spotlight and a flashlight while it was dark outside,[1] and asking individuals what they were doing in a particular location do not support the existence of a detention. As any private citizen may do, a police officer may approach an individual at any time of the day and ask questions. While subsequent events can turn a consensual encounter into a detention, appellee specifically limited his complaint to the beginning of the encounter, so the officer's subsequent requests for identification (which could possibly have been supported by reasonable suspicion arising after the initial contact) do not enter into the analysis. And while the Court recites appellee's subjective perception that he was not free to leave, the Court concedes that this subjective perception "is not particularly relevant."

---

[1] *See People v. Cascio*, 932 P.2d 1381 , 1388 (Colo. 1997)(use of spotlight and flashlights were practical necessity for encounter that took place in the dark and appellate court declined to attribute any significance to their use). The officer's emergency lights had *not* been activated. The numerous cases cited by the Court that involved the use of "blue flashers" or police emergency lights, *see* Court's op. at 15 n.43, are simply irrelevant to the case before us.

The Court claims that the video recording supports an implicit finding that Officer Okland used "an authoritative, commanding voice and demeanor that brooked no disagreement into his official investigation."[2] The first thirty seconds of the video is silent, and in the remainder of the video Officer Okland's voice sounds simply like someone engaged in casual conversation. I disagree with the Court's conclusion that the video supports a finding that the officer used an "authoritative, commanding voice and demeanor," and without some support in the record, I do not think such a finding can be implied.

What remains is the fourth "implicit finding" recited by the Court: that Officer Okland had "boxed in" appellee's parked truck. This factor would be significant if there had been any evidence that appellee wanted to drive away, but there was not. Appellee was parked when Officer Okland approached him and was waiting patiently for someone in the house nearby. Moreover, when Officer Okland approached, appellee voluntarily exited his vehicle. Under those circumstances, appellee was essentially a pedestrian, and he was "not clearly stopped in any sense, *ab initio* except of his own volition."[3] The cases cited by the Court for the proposition that "boxing in" a suspect's car constitutes a detention are all distinguishable for one reason or another, and in any event, they are not binding authority.

With these comments, I respectfully dissent.

Filed: May 7, 2008
Publish

---

[2] Court's op. at 14.

[3] *United States v. Summers*, 268 F.3d 683, 687 (9th Cir. 2001).