FILED
United States Court of Appeals
Tenth Circuit

November 12, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

KEITH TERRELL THOMPSON,

      Defendant-Appellant.

No. 07-6238

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. CR-07-00108-M)**

William Lee Borden, Jr., Assistant U.S. Attorney, (John C. Richter, U.S.
Attorney, with him on the brief) Oklahoma City, Oklahoma, for Plaintiff-
Appellee.

William P. Earley, Assistant Federal Public Defender (June E. Tyhurst, Assistant
Federal Public Defender, on the briefs) Oklahoma City, Oklahoma, for Defendant-
Appellant.

Before **HARTZ**, **McWILLIAMS** and **McCONNELL**, Circuit Judges.

**McCONNELL**, Circuit Judge.

Defendant-Appellant Keith Thompson was approached by police officers

while walking to his car at a convenience store. Four police cars pulled into the

parking lot, and one parked about twelve feet behind Mr. Thompson's car. An officer asked Mr. Thompson if he had anything illegal. Mr. Thompson eventually admitted to having a gun in his pocket. He was convicted of gun possession by a convicted felon. We are now called upon to determine whether this police encounter violated the Fourth Amendment. We affirm the district court's denial of his motion to suppress.

## I. BACKGROUND

Four squad cars were en route to a high crime area along I-35 in Oklahoma City when Officer Zepeda noticed four or five people standing in the parking lot of a 7-11 convenience store. Officer Zepeda pulled into the parking lot, followed by two of the other squad cars. The fourth squad car made a U-turn and then pulled into the lot. Officer Zepeda parked his car approximately twelve feet behind a red Mustang, later identified as belonging to Defendant-Appellant Keith Thompson. The other three officers parked their vehicles closer to the store. Based on somewhat conflicting testimony, the district court found: "it may be likely that Thompson would not have been able to back his car out without Officer Zepeda moving his vehicle . . . ."

When the squad cars pulled into the parking lot, Mr. Thompson was coming out of the store with a drink and doughnut and walking towards his car. Two officers entered the 7-11, where they ultimately arrested someone for marijuana possession. Fully uniformed, with his weapon holstered, Officer Zepeda

approached Mr. Thompson without any particularized grounds for reasonable suspicion, simply because "he was the only one that wasn't running." After asking Mr. Thompson if he could speak with him and receiving consent, Officer Zepeda asked Mr. Thompson if he had anything illegal. Mr. Thompson became nervous and did not answer the question. Officer Zepeda told him to relax and then repeated his question. Mr. Thompson responded, "I have a gun in my back pocket."

Officer Zepeda told Mr. Thompson to put his hands on the car, and then reached around and felt the gun through the outside of Mr. Thompson's back pocket. He told Mr. Thompson to leave his hands on the car, removed the weapon, and gave it to another officer who had walked over to assist him. Officer Zepeda then placed handcuffs on Mr. Thompson for investigative purposes. Upon realizing that the gun had the serial number ground off of it, the officers arrested Mr. Thompson. While running a background check, Officer Zepeda asked him if he was a convicted felon. Mr. Thompson said that he was, and his statement was confirmed through the computer background check. Six days later, Mr. Thompson was interviewed while in jail, and he confirmed his earlier admission that he illegally possessed a gun at the time of his arrest.

Mr. Thompson was charged with gun possession by a convicted felon. He filed motions to suppress evidence resulting from his encounter with Officer Zepeda and his subsequent jailhouse confession, both of which were denied. At

trial, however, the government did not introduce the subsequent jailhouse confession. The jury voted to convict.

On appeal, Mr. Thompson maintains that the initial encounter with Officer Zepeda constituted a seizure, which was not supported by reasonable suspicion or probable cause. As a result, he argues that the gun and subsequent confession were fruits of the poisonous tree and should have been suppressed. Even if the initial encounter was not a seizure, Mr. Thompson argues that the subsequent search was not consensual.

## II. DISCUSSION

According to formal legal doctrine, an encounter between an individual and the police is consensual when "a reasonable person would feel free 'to disregard the police and go about his business.'" *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (quoting *California v. Hodari D.*, 499 U.S. 621, 628 (1991). In addressing this question, however, we must be guided by the Court's decisions in similar cases rather than our own experience regarding how reasonable people actually respond to police investigations.[1]

The most recent Supreme Court case relevant to this question is *United States v. Drayton*, 536 U.S. 194 (2002). In *Drayton*, the defendants were

---

[1] It might bring greater clarity to this area of the law if the test were framed in terms of whether the officer's behavior is coercive rather than whether, under the circumstances, the reasonable person would feel "free to disregard the police," which we suspect is unrealistic.

-4-

passengers on a Greyhound bus that had stopped to refuel. Three police officers boarded the bus as part of a routine drug and weapons interdiction effort. One officer stood at the back of the bus, one at the front, and the other next to or behind each passenger as he asked him questions. The Court noted that the exits of the bus were not blocked. *Id.* at 204. When talking to the defendants, the officer stated his purpose and asked if they had any bags on the bus. *Id.* at 198. The officer obtained permission to search the defendants' bag, which revealed no contraband. Noticing the defendants were wearing baggy clothes, he asked if he could check their persons. *Id.* at 199. Each permitted a pat down search, which revealed packages of drugs, and the officers arrested both defendants. *Id.* The Supreme Court held that because there was "no application of force, no intimidating movement, no overwhelming show of force, no brandishing of weapons, no blocking of exits, no threat, no command, [and no] authoritative tone of voice," and the encounter took place in the presence of other citizens, the interaction was consensual and no seizure had occurred. *Id.* at 204.

Drawing on the decisions in *Drayton* and other cases, this Court has identified a list of factors relevant to the consent inquiry, including:

> the location of the encounter, particularly whether the defendant is in an open public place where he is within the view of persons other than law enforcement officers; whether the officers touch or physically restrain the defendant; whether the officers are uniformed or in plain clothes; whether their weapons are displayed; the number, demeanor and tone of voice of the officers; whether and for how long the officers retain the defendant's personal effects such as tickets or

identification; and whether or not they have specifically advised defendant at any time that he had the right to terminate the encounter or refuse consent.

*United States v. Spence*, 397 F.3d 1280, 1283 (10th Cir. 2005). We have said that this list of factors is not exhaustive and that "no one factor is dispositive." *United States v. Abdenbi*, 361 F.3d 1282, 1291 (10th Cir. 2004). "When viewing the totality of the circumstances, it may be that the strong presence of two or three factors demonstrates that a reasonable person would have believed that he was not free to terminate an encounter with government officials." *Jones v. Hunt*, 410 F.3d 1221, 1226 (10th Cir. 2005).

We applied these factors in *United States v. Ringold*, 335 F.3d 1168 (10th Cir. 2003), a case somewhat similar to the case at hand. There, the defendant pulled into a gas station and convenience store parking lot and parked his car at a gas pump. A uniformed police officer pulled into the parking lot and parked his patrol car at an angle approximately fifteen to twenty feet from the defendant's car. *Id.* at 1170. The district court found that "the patrol car was not blocking defendants or their car from leaving the station." *Id.* at 1172. The officer approached the defendant, who was putting gas into his car, and another officer stood within earshot. They were in full view of other patrons. Both officers were armed, but their guns remained holstered throughout the encounter. *Id.* at 1171. The first officer engaged the defendant in conversation. Initially, the conversation centered around the weather, where the defendant was from, and

whether he was on vacation. Then the officer asked if the defendant was carrying any illegal drugs or weapons. *Id.* at 1172. The defendant denied that he was, and upon being asked if the officer could look in his car, he agreed. He also agreed to let the officer look inside two suitcases in the trunk, which resulted in the discovery of a large bale of marijuana. *Id.* at 1171. We held that the defendant's encounter with police was consensual, and thus he was not seized for purposes of the Fourth Amendment. *Id.* at 1172.

In most respects, the police encounter in this case possesses the same characteristics as the encounters in *Drayton* and *Ringold*. First, the encounter here occurred in a public place—the parking lot of a 7-11 store—in view of other patrons. Both the Supreme Court and this Court have held that the presence of other citizens during a police encounter is one factor suggesting its consensual nature. *See Drayton*, 536 U.S. at 204 (noting that the presence of many fellow passengers during the police encounter may make a reasonable person feel "even more secure in his or her decision not to cooperate with police"); *Ringold*, 335 F.3d at 1172 (noting that the officers approached the defendants in a public space, in full view of other service station patrons); *Zapata*, 997 F.2d at 757 (noting that a reasonable person in such a public setting "is less likely to feel singled out as the officers' specific target–and less likely to feel unable to decline the officers' requests and terminate the encounter"). *But see United States v. Little*, 18 F.3d 1499, 1504 n.5 (10th Cir. 1994) (noting that some people might feel "more

-7-

'coerced' in a public setting, where they might be embarrassed to decline police requests in the hearing and view of others").

Second, Officer Zepeda did not touch Mr. Thompson until after he had stated that he had a gun. He did not threaten him with any use of force or brandish or display his weapon at any time. Had Officer Zepeda engaged in these sorts of actions, it might have suggested a lack of consent. *See Drayton*, 536 U.S. at 204–05 (noting the coercive nature of actively brandishing a weapon). That the officer did not do so, however, tends to suggest the encounter was consensual. *See id.* at 204; *see also Ringold*, 335 F.3d at 1172.

Third, the district court noted that while four officers were on the premises, only one, Officer Zepeda, approached Mr. Thompson. The other officers were either in the 7-11 store or were talking to others in the parking lot. To be sure, officers in the store arrested another person, which might be thought to make a reasonable person in Mr. Thompson's circumstances fear that a similar outcome was likely in his case, but the Supreme Court in *Drayton* reasoned that the arrest of one person does not result in the seizure of those in his presence. *Drayton*, 536 U.S. at 206. If anything, the sight of others, but not oneself, being arrested is reassuring rather than alarming, and gives notice of the consequences of answering the officers' questions. *Id.*

Most importantly under the precedents, Officer Zepeda did not use an antagonistic tone in asking questions. As we have held, "[a]ccusatory, persistent, and intrusive questioning can turn an otherwise voluntary encounter into a coercive one." *United States v. Little*, 60 F.3d 708, 712 (10th Cir 1995) (internal quotations omitted). Such coerciveness was not present in *Drayton* and *Ringold*, and according to the district court's factual findings, which the defendant does not challenge as clearly erroneous, it is not present here. *See Drayton*, 536 U.S. at 204; *Ringold*, 335 F.3d at 1174.

Admittedly, the officers were uniformed and not in plain clothes, which in the past we have held could serve as an intimidating factor. *See Spence*, 397 F.3d at 1283. The Supreme Court, however, cast doubt on this supposition in *Drayton*. 536 U.S. 194, 204 (noting that the fact that an officer is uniformed or visibly armed "should have little weight in the analysis"). It is possible that reasonable persons have, or should have, greater confidence in the professionalism and good will of uniformed officers than of persons asserting authority who are not in uniform.

Officer Zepeda also did not advise Mr. Thompson that he was free to leave or to disregard his questions. The officers in *Drayton*, however, also failed to do so, and the Supreme Court still held that the "officers gave the passengers no reason to believe that they were required to answer the officers' questions." *Id.* at

-9-

203. There the Supreme Court expressly rejected the Eleventh Circuit's rule which made all police encounters non-consensual where officers failed to advise individuals of their right not to comply with their requests. *Id.* at 203. We have also rejected such arguments. *See Ringold*, 335 F.3d at 1174 (discussing *United States v. Broomfield*, 201 F.3d 1270, 1275 (10th Cir. 2000)). Thus, the officer's failure to advise Mr. Thompson should carry little weight in our analysis.

One factor could be used to distinguish this case from *Drayton* and *Ringold* and, Mr. Thompson argues, to suggest that his encounter with the police was not consensual. In *Drayton*, the Court noted expressly that the officers had not blocked the defendant's exit. *Drayton*, 536 U.S. at 203. In *Ringold*, the district court made an express finding that the officers' patrol car had *not* blocked in the defendant's car. *Ringold*, 335 F.3d at 1173. Here, no such finding was made. Officer Zepeda parked his car approximately twelve feet behind Mr. Thompson's car. It is not certain whether Mr. Thompson could have maneuvered his car out of the parking space without Officer Zepeda moving his car. The district court noted "it *may be likely* that Thompson would not have been able to back his car out without Officer Zepeda moving his vehicle . . . ." (emphasis added).

Even if Mr. Thompson's car was actually blocked in the parking spot, this fact would not be dispositive. In *United States v. Summers*, 268 F.3d 683 (9th Cir. 2001), a police officer observed the defendant carrying a box from a semi-

trailer to his car. The officer parked his vehicle in a manner that "partially blocked" the defendant's car, and then proceeded to question the defendant. *Id.* at 687. The court concluded that the interaction was voluntary: "[The defendant's] car was parked and was only partially blocked. Nothing prevented him from leaving the scene on foot." *Id.*; *see also United States v. Kim*, 25 F.3d 1426, 1430-31 & n.2 (9th Cir. 1994) (holding an encounter consensual where the officer partially blocked the path of a parked car into which the defendant was climbing and noting he still would have been free to leave even if the officer had more completely blocked his car). The court held that "the interaction did not implicate the Fourth Amendment in the same manner as do traffic stops, because the car was parked." *Id.* at 1430.

Some courts have held that "blocking an individual's path or otherwise intercepting him to prevent his progress in any way is a consideration of great, and probably decisive, significance." *United States v. Berry*, 670 F.2d 583, 597 (5th Cir. Unit B 1982); *accord, United States v. Waksal*, 709 F.2d 653, 659 (11th Cir. 1983). Those decisions, however, refer to blocking an individual's path while he is on foot. Indeed, in *Waksal*, the court stated that "[t]here is no credible evidence that the officers blocked appellant's way" when they approached him in an airport, identified themselves as police officers, and asked him to accompany them to a nearby office. *Id.* at 660. Similarly, here Officer Zepeda simply approached Mr. Thompson and asked if he could speak to him. The officer did

-11-

not block his path or restrain him in any way. Where an individual is on foot when approached by the police officer, the fact that his car may be blocked does not, in itself, render the person's decision to answer questions or consent to a search involuntary. The question in this case is whether Mr. Thompson's person was seized within the meaning of the Fourth Amendment, not whether his car was stopped. *Kim*, 25 F.3d at 1430. Of course, we do not rule out the possibility that under some factual circumstances, preventing a pedestrian from driving his car away could constitute a seizure. But here, as the district court concluded, Mr. Thompson could have walked somewhere else, or refused to talk to the police. *See Summers*, 268 F.3d at 687.

An evaluation of the totality of the circumstances is a fact-intensive inquiry, and we must "view the evidence in the light most favorable to the government." *United States v. Worthon*, 520 F.3d 1173, 1178 (10th Cir. 2008). Moreover, we bear in mind that the district court heard the testimony and we did not. Even if we might have weighed the factors differently, we cannot say the district court erred in holding that the totality of the circumstances, viewed in light of the Supreme Court's and our own precedent, indicates Mr. Thompson's encounter with the police was consensual. The fact that Officer Zepeda parked his car approximately twelve feet from Mr. Thompson's car is not enough in and of itself to tip the balance in favor of finding a lack of consent.

In sum, we hold that Mr. Thompson's initial encounter with Officer Zepeda was consensual. Once Mr. Thompson said that he had a gun in his back pocket, Officer Zepeda had probable cause to seize the gun and arrest him. It is irrelevant whether Mr. Thompson continued to provide consent for this search, as the requisite level of suspicion existed to justify such a search and seizure.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.