FILED
United States Court of Appeals
Tenth Circuit

July 20, 2016

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

NORA ASUSENA AMADOR-
BELTRAN,

    Defendant - Appellant.

No. 15-2216
(D.C. No. 1:15-CR-01019-JB-1)
(D.N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **EBEL** and **LUCERO**, Circuit Judges.
_____

Nora Amador-Beltran appeals the denial of her motion to suppress. Exercising

jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

**I**

In March 2015, Drug Enforcement Agent Jarrell Perry boarded a Greyhound

bus during a stopover in Albuquerque, New Mexico. He greeted Amador-Beltran,

who indicated she did not speak English fluently. The two thus conversed in

Spanish. Although Perry is not fluent in Spanish, he has some proficiency in

investigative questions. He identified himself as a police officer and asked whether

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Amador-Beltran would allow him to speak with her. She responded in the affirmative. Perry stood in the row behind Amador-Beltran's seat during the conversation. He was in plain clothes, unaccompanied by other officers, and did not have a visible weapon. He was also wearing a recording device that captured their discussion. Perry spoke in a conversational tone throughout the encounter.

After discussing Amador-Beltran's travel plans, Perry asked if she would "allow [him] to search for contraband in [her] luggage." Amador-Beltran replied, "Yes," and handed Perry a bag. Perry searched the bag and returned it. The same exchange occurred with Amador-Beltran's purse and pillow.

Perry then noticed what he thought was a blanket under Amador-Beltran's leg. He asked, "And will you allow me to search for contraband in your uh . . . uh . . . uh . . . blanket?" Amador-Beltran pulled the item from under her and asked, "Sweater?" Perry responded, "Oh, OK, jacket?" Although the transcript of the recording shows the final word Perry spoke as "chamarra" (jacket), Amador-Beltran contends that Perry did not respond with a Spanish word at all, but instead said something like "eschura." Amador-Beltran said yes and handed Perry the sweater.

Perry felt a fanny pack in one of the sleeves of the sweater. He removed the pack from the sweater, unzipped it, and observed two rectangular brick-shaped bundles wrapped in plastic and aluminum foil. Amador-Beltran did not object or otherwise interfere during the search. The bundles were later determined to contain heroin.

2

Amador-Beltran was charged with possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). After the district court denied her motion to suppress, she pled guilty pursuant to a plea agreement. She reserved her right to appeal the denial of her motion to suppress and does so now.

**II**

In reviewing the denial of a motion to suppress, we accept the district court's findings of fact unless clearly erroneous, and view the evidence in the light most favorable to the government. United States v. Garcia, 707 F.3d 1190, 1194 (10th Cir. 2013). The ultimate determination of whether a Fourth Amendment violation occurred is reviewed de novo. Id. Whether consent was voluntarily provided is a factual question reviewed for clear error. See United States v. Harrison, 639 F.3d 1273, 1277 (10th Cir. 2011). And a "district court's conclusion that a search is within the boundaries of a defendant's consent is a factual finding that this court reviews for clear error." United States v. Jackson, 381 F.3d 984, 988 (10th Cir. 2004). However, we review de novo whether consent was validly given. United States v. Andrus, 483 F.3d 711, 716 (10th Cir. 2007).

Our court applies a two-pronged test to determine whether consent was valid: "(1) [t]here must be . . . clear and positive testimony that consent was unequivocal and specific and freely given; and (2) [t]he government must prove consent was given without duress or coercion, express or implied." United States v. Guerrero, 472 F.3d 784, 789 (10th Cir. 2007) (quotation omitted). Amador-Beltran advances arguments as to both prongs.

3

First, Amador-Beltran contends that she did not unequivocally provide consent to search her sweater and fanny pack due to language difficulties. See e.g., United States v. Benitez-Arreguin, 973 F.2d 823, 825, 829 (10th Cir. 1992) (reversing district court's denial of motion to suppress in which an officer searched after making "hand motions toward the bags held by the defendant to indicate that he wanted to look"). "To satisfy the first prong of the voluntariness requirement, a defendant's consent must be clear, but it need not be verbal. Consent may instead be granted through gestures or other indications of acquiescence, so long as they are sufficiently comprehensible to a reasonable officer." Guerrero, 472 F.3d at 789-90.

Even assuming that Perry responded to Amador-Beltran with an unintelligible word just prior to the search of the sweater, the context of their exchange makes her consent clear. After Perry asked for, and received, permission to search various other items, he asked Amador-Beltran for permission to search what he believed was a blanket. Amador-Beltran understood that he was asking for permission to search the sweater, and manifested her consent by handing it to him. We thus conclude that Amador-Beltran's consent was clear.

Amador-Beltran also argues that even if she consented to a search of her sweater, that consent did not extend to the fanny pack. "The search of a container does not exceed the scope of consent when, under the circumstances of the particular case, it was objectively reasonable for the officer to believe that the scope of the suspect's consent permitted him to open the container." Jackson, 381 F.3d at 988. "A defendant's failure to limit the scope of a general authorization to search, and

4

failure to object when the search exceeds what he later claims was a more limited consent, is an indication that the search was within the scope of consent." Id.

By handing the fanny pack, albeit wrapped in a sweater, to Perry without limiting the scope of her consent, Amador-Beltran sufficiently manifested her permission to search the fanny pack. See Florida v. Jimeno, 500 U.S. 248, 251 (1991) (because "[a] reasonable person may be expected to know that narcotics are generally carried in some form of a container," unlimited consent to search for contraband in an object includes permission to search containers within that object). We reject Amador-Beltran's contention that her consent was not unequivocally given. We also reject her argument that failure to object is meaningless absent evidence that a defendant observed the search. There is no claim that Perry attempted to block Amador-Beltran's view of the search. Cf. United States v. McWeeney, 454 F.3d 1030, 1033, 1036 (9th Cir. 2006) (officers ordered defendants to look elsewhere during search of vehicle). If Amador-Beltran elected to look away during the search, which occurred a few feet from her, that fact would support a finding of unlimited consent. We conclude Amador-Beltran's consent was freely given, and reject any argument to the contrary.

As to the second prong, Amador-Beltran claims her consent was implicitly coerced. In determining the validity of consent, the relevant question is whether "a reasonable person would believe he was free . . . to deny the officer's request to search." Guerrero, 472 F.3d at 790. We have identified a number of factors relevant to this inquiry. See United States v. Thompson, 546 F.3d 1223, 1226 (10th Cir.

5

2008) (providing non-exhaustive list of factors). All but one of these factors tips in favor of the government. Amador-Beltran was in a public place in view of other passengers, Perry did not touch her or block her into her seat, he was wearing plain clothes, his weapon was concealed, he was the only officer present, he used an ordinary tone in speaking, and he immediately returned Amador-Beltran's identification and bus ticket before asking to search her luggage. Perry did not advise Amador-Beltran of her right to decline consent, but this factor alone is not dispositive. See id. at 1228 (rejecting argument that "all police encounters [are] non-consensual where officers failed to advise individuals of their right not to comply with their requests" and stating that "the officer's failure to advise [defendant] should carry little weight in our analysis"). Viewing the totality of the circumstances, we conclude Amador-Beltran's consent was freely given and not coerced. See United States v. Drayton, 536 U.S. 194, 198-99, 207 (2002) (holding consent voluntary under similar facts).

## III

**AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge

6