**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 19, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellant,

v.

FRANCISCO ARMANDO MARTINEZ,

    Defendant - Appellee.

No. 19-2010
(D.C. No. 2:18-CR-02315-KG-1)
(D.N.M.)

_____

**ORDER AND JUDGMENT[\*]**
_____

Before **MORITZ**, **McKAY**, and **CARSON**, Circuit Judges.
_____

The Fourth Amendment protects citizens from unreasonable seizures by law enforcement. If an inquisitive agent approaches someone who does not want to respond, all the person must do is say so. But if one voluntarily answers an agent's non-coercive questions, the conversation falls outside the scope of the Fourth Amendment even if, as is the case here, it reveals a crime. Defendant Francisco Armando Martinez ("Defendant") engaged in such a consensual encounter with law enforcement here. We exercise jurisdiction under 18 U.S.C. § 3731 and reverse the district court's order granting his motion to suppress evidence from the encounter.

---

[\*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

While driving, United States Border Patrol Agents Robert Diharce and Guillermo Ramirez (collectively, the "Agents"), passed Defendant's vehicle. Agent Diharce noticed that the back seat passengers appeared "crowded." Agent Diharce made a U-turn and followed Defendant's vehicle for further observation. The Agents trailed Defendant's vehicle for twenty-one miles or so. Defendant eventually entered a truck stop and pulled up to a gas pump. The Agents, in uniform with holstered sidearms, followed Defendant's vehicle into the gas station, parking approximately ten feet behind Defendant's vehicle in a way that did not impede its path of exit. At this time, no one was "milling around" in the immediate vicinity of Defendant's vehicle, but customers may have been walking in and out of the convenience store. One or two additional vehicles were parked at other gas pumps, but Defendant could not see the other customers from where he stood.

Upon pulling up to the pump, Defendant exited his vehicle and started walking toward the convenience store. He reversed course, however, and returned to the vehicle after Agent Diharce exited the Border Patrol truck. At this point, Agent Diharce observed "four to five" people in the back seat of the vehicle. Agent Diharce approached Defendant while Agent Ramirez stood on the rear passenger's side of the vehicle. Agent Diharce greeted Defendant with "Good morning," and identified himself as a Border Patrol agent. Agent Diharce immediately asked Defendant if he was a United States citizen. Defendant replied in the affirmative. Agent Diharce then asked Defendant if those inside the vehicle were his family. Defendant replied

that he did not know the passengers, adding that he picked them up on the side of the highway after they flagged him down. Agent Diharce used a "conversational tone" and remained approximately three feet away from Defendant throughout the exchange.

Upon hearing that Defendant did not know the individuals in the back seat of his vehicle, Agent Ramirez asked Defendant if he could speak to them. After Defendant tacitly consented by lowering the passenger window, Agent Ramirez questioned the passengers and determined that they were Mexican nationals without immigration documents. Upon hearing this—about five minutes after arriving at the gas station—Agent Diharce arrested Defendant.

A federal grand jury indicted Defendant for conspiracy to transport illegal aliens (8 U.S.C. § 1324(a)(1)(A)(v)(I)) and transporting illegal aliens (8 U.S.C. §§ 1324(a)(1)(A)(ii), (a)(1)(B)(ii), and (a)(1)(A)(v)(II)). Defendant moved to suppress all evidence that the Agents obtained on the day of his arrest. The district court held a suppression hearing and issued a thorough and thoughtful order suppressing Defendant's statements, his passengers' statements, and all other evidence relating to the gas station encounter.

The district court concluded the Agents violated Defendant's Fourth Amendment rights by subjecting him to an investigative detention without reasonable suspicion.[1] Consistent with its Fourth Amendment reasoning, the district court held

_____

[1] The government concedes it "did not press a reasonable-suspicion argument below and does not ask the Court to consider it now." Accordingly, we will focus

3

that the Agents also violated Defendant's Fifth Amendment rights by subjecting Defendant to a custodial interrogation without first issuing Miranda warnings. The government now appeals.

II.

The government contends the district court erred when it granted Defendant's motion to suppress. It argues that, under the totality of the circumstances, Defendant's interaction with the Agents was a consensual encounter that does not implicate the Fourth Amendment. The government further contends the Agents did not violate Defendant's Fifth Amendment Miranda rights because they did not subject Defendant to a custodial interrogation.

"In reviewing a district court's ruling on a motion to suppress evidence, we view the evidence in the light most favorable to the prevailing party and accept the district court's findings of fact unless they are clearly erroneous." United States v. Hernandez, 847 F.3d 1257, 1263 (10th Cir. 2017). "We review de novo the relevant circumstances to determine whether an interaction between an individual and a law enforcement officer is a consensual encounter that does not implicate the Fourth Amendment." Id. at 1272 ("the ultimate determination of reasonableness under the Fourth Amendment" is a question of law that we review de novo (id. at 1271)). For the purposes of Miranda and the suppression of evidence under the Fifth Amendment, we similarly "review de novo the district court's determination that an individual is

our Fourth Amendment analysis exclusively on whether Defendant's encounter with law enforcement was a consensual encounter or an investigative detention.

4

in custody, but we give deference to the district court's findings of fact and to its credibility determinations." United States v. Revels, 510 F.3d 1269, 1273 (10th Cir. 2007) (citation omitted).

A.

The Fourth Amendment protects individuals against unreasonable searches and seizures by law enforcement. See U.S. Const. amend. IV. But "[i]t does not proscribe voluntary cooperation." Florida v. Bostick, 501 U.S. 429, 439 (1991). We have identified three types of police-citizen encounters:

> (1) consensual encounters which do not implicate the Fourth Amendment; (2) investigative detentions which are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity; and (3) arrests, the most intrusive of Fourth Amendment seizures and reasonable only if supported by probable cause.

United States v. Ringold, 335 F.3d 1168, 1171 (10th Cir. 2003) (citation omitted). A seizure does not occur just because an officer "approaches an individual and asks a few questions." Bostick, 501 U.S. at 434. Instead, such an encounter will not trigger the Fourth Amendment "unless it loses its consensual nature." Id.

The dispositive issue in this case is whether the Agents' encounter with Defendant was consensual and, therefore, not a violation of the Fourth Amendment. In determining if an encounter is consensual, "the crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." Hernandez, 847 F.3d at 1263 (internal

5

quotation marks omitted) (quoting Bostick, 501 U.S. at 437). This "test allows officers to make inquiries so long as they [do not] throw their official weight around unduly." Id. at 1263–64. "There are no per se rules that govern this inquiry; rather, every case turns on the totality of the circumstances presented." Id. at 1264 (internal quotation marks and citation omitted).

We have "enumerated a non-exhaustive list of factors to be considered in determining whether a reasonable person would feel free to terminate his encounter with the police." Id. Those factors are:

> the location of the encounter, particularly whether the defendant is in an open public place where he is within the view of persons other than law enforcement officers; whether the officers touch or physically restrain the defendant; whether the officers are uniformed or in plain clothes; whether their weapons are displayed; the number, demeanor and tone of voice of the officers; whether and for how long the officers retain the defendant's personal effects such as tickets or identification; and whether or not they have specifically advised defendant at any time that he had the right to terminate the encounter or refuse consent.

Id. (citation omitted). "Although no single factor is dispositive, the strong presence of two or three factors may be sufficient to support the conclusion a seizure occurred." Id. (internal quotation marks and citation omitted).

The government contends that Defendant's interaction with the Agents was a consensual encounter because: (1) it occurred in a public place, (2) the Agents did not create a coercive environment, and (3) Agent Diharce did not question Defendant in a coercive manner. We agree.

Initially, the location of the interaction weighs in favor of consensuality in this case because the encounter occurred at a public place in full view of other customers

6

and Defendant's passengers. While location is not determinative, "it is an important factor." United States v. Little, 18 F.3d 1499, 1510 (10th Cir. 1994) (en banc) (recognizing that "[o]n more than one occasion[,] the Supreme Court has recognized the importance of location in the seizure determination" (collecting cases)). Indeed, the Supreme Court and our Court have placed great weight on location—concluding encounters in the presence of others are more likely to be consensual than encounters where no members of the public are present. Compare United States v. Drayton, 536 U.S. 194, 204 (2002), with Hernandez, 847 F.3d at 1265.

In this case, the Agents approached Defendant in broad daylight at a gas station open to the public. Cf. Hernandez, 847 F.3d at 1265, 1270 (treating a police-citizen encounter that occurred at night along a fenced-in construction site where no other individuals or cars were present as a non-public encounter even though the location was technically accessible to the public). And, importantly, other patrons were filling up with gas and accessing the convenience store at the same time.[2] Although nobody else was "milling around" Defendant's vehicle, the presence of

---

[2] The record does not establish whether the other patrons—either in the store or at the pumps—actually witnessed the conversation unfold between Defendant and Agent Diharce. The absence of this information, however, does not change the analysis as the totality of the circumstances make clear the location was a public one in active use by others at the time of the encounter. The test, after all, does not turn on whether anyone at the truck stop noticed, but instead on whether others were present. See United States v. Thompson, 546 F.3d 1223, 1227 (10th Cir. 2008) (observing that a parking lot encounter occurred in a public setting because several people were present at the scene, even though those in the parking lot were otherwise engaged in their own conversations with law enforcement at the time of the defendant's encounter).

other patrons at the truck stop increases a reasonable person's readiness to decline to participate in a conversation with police. See Ringold, 335 F.3d at 1172 (finding a police-citizen encounter to be consensual, largely because the interaction occurred "in the public space outside [a] service station"). Thus, the encounter maintained a meaningful level of public exposure with other patrons in the vicinity at a public location.

The next factor also weighs in favor of the encounter being consensual because the Agents approached Defendant in a non-threatening manner, did not block his path of exit, and did not otherwise restrain him. See United States v. Easley, 911 F.3d 1074, 1080 (10th Cir. 2018) (observing that "when we speak of a coercive environment, we mean an environment that is the creation of law enforcement conduct"), cert. denied, 139 S. Ct. 1644 (2019). Of course, we recognize "the natural tendency of any person . . . to feel somewhat cowed when a law enforcement officer approaches and begins to ask questions." Ringold, 335 F.3d at 1174. This tendency, however, does not mean that the mere approach of uniformed law enforcement agents amounts "to a show of authority that would indicate to a reasonable person that he had to" answer an agent's questions. Id. at 1173. To the contrary, if agents approach an individual in a "nonthreatening" manner, a reasonable person under the circumstances is more likely to feel "free to decline the [agents'] requests or

8

otherwise terminate the encounter," thus supporting the consensual nature of any subsequent interaction. Id. at 1173–74 (citation omitted). Such is the case here.[3]

Additionally, "the number of officers is one of many factors to consider." Hernandez, 847 F.3d at 1266. Although "the presence of more than one officer increases the coerciveness of an encounter[,] . . . the presence of two uniformed and armed officers does not automatically transform every police-citizen encounter into a nonconsensual one." Id. (citation omitted). Instead, we look at agent conduct rather than mere presence. See United States v. Jones, 701 F.3d 1300, 1314 (10th Cir. 2012). Here, both Agents exited their vehicle upon arriving at the gas station, but only Agent Diharce approached Defendant, while Agent Ramirez remained on the

---

[3] Defendant asks us to infer that a reasonable person under the circumstances would recognize that the Agents were following him on the highway, given the distance for and proximity from which the Agents followed Defendant's vehicle. As Defendant conceded at oral argument, however, the district court did not make an express factual finding that Defendant knew the Agents were following him. We likewise determine that the district court did not rely on a potential inference that Defendant knew the Agents followed him at all. Accordingly, we decline to draw any inference beyond the facts found by the district court, and we independently find no evidence in the record to suggest that Defendant was aware the Agents were following him at any point before he reached the gas station. See, e.g., United States v. Vercher, 358 F.3d 1257, 1261 (10th Cir. 2004) (reiterating that factual "inferences and conclusions drawn therefrom, are matters for the trial judge").

Even if we did agree with Defendant that we should consider the circumstances of the Agents' pursuit of Defendant, we conclude that the "earlier interaction does not convert the later meeting into a nonconsensual encounter." Ringold, 335 F.3d at 1173 (reasoning that the fact that an officer "drove past defendants on the Interstate without pulling them over, before his ensuing turnaround and approach to them at the service station, did not amount to a show of authority that would indicate to a reasonable person that he had to comply with [the officer's] inquiries" because the driver "chose to leave the highway and voluntarily stopped [his] vehicle at the service station" (id.)) Accordingly, Defendant's awareness of the Agents on the highway, or lack thereof, does not affect our analysis.

9

opposite side of Defendant's vehicle. The presence of two agents in this case is not particularly coercive because the Agents did not surround Defendant in a way that prevented him "from simply entering his vehicle and driving away." Ringold, 335 F.3d at 1173 (observing that "although [two officers] were standing on either side of [the defendant] and the gas pump," that did not diminish the consensual nature of the encounter because "nothing prevented [Defendant] from simply entering his vehicle and driving away").

Likewise, only Agent Diharce initiated conversation with Defendant. Where only one agent approaches an individual, even though multiple agents are present, "there [is] no threatening presence of several officers." See Easley, 911 F.3d at 1080. Indeed, a one-on-one conversation is less coercive than one in which an individual must field questions from multiple agents, which is more likely to make a reasonable person feel "outnumbered." See United States v. Bloom, 975 F.2d 1447, 1454 (10th Cir. 1992), overruled on other grounds by United States v. Simpson, 609 F.3d 1140, 1148 (10th Cir. 2010). Even though Agent Ramirez later asked to speak with Defendant's passengers, the fact that only Agent Diharce directly approached and questioned Defendant limits the coerciveness of the encounter. See Thompson, 546 F.3d at 1227 (reasoning that although "four officers were on the premises," the fact that only one directly questioned the defendant supported the consensual nature of the encounter).

Moreover, the Agents did not otherwise intimidate, touch, or restrict Defendant's movement. See Drayton, 536 U.S. at 204 (determining an encounter was

consensual because "[t]here was no application of force, no intimidating movement, no overwhelming show of force, no brandishing of weapons, no blocking of exits, no threat, no command, not even an authoritative tone of voice"). That the Agents were in uniform and visibly armed carries "little weight in the analysis." Drayton, 536 U.S. at 204–05. Indeed, Agent Diharce stood a respectful distance from Defendant and behaved in a "non-threatening" manner towards Defendant. The Agents also parked "approximately ten feet" behind Defendant's vehicle, which maintained an unobstructed exit path. See Ringold, 335 F.3d at 1170 (concluding that an encounter was consensual where the officers parked their patrol car "15 or 20 feet" away from the suspect's vehicle in a way that did not impede the suspect's path). Accordingly, the Agents did not create a coercive environment because the Agents did not threaten, command, or otherwise prevent Defendant from extracting himself from an otherwise consensual encounter.[4]

Finally, Agent Diharce did not question Defendant in a coercive manner because his non-threatening demeanor and conversational tone during the brief

---

[4] Defendant relies heavily on the Fourth Circuit's opinion in United States v. Jones, 678 F.3d 293 (4th Cir. 2012) to argue that a reasonable person in Defendant's circumstances would not feel free to end the encounter, thus making the encounter an investigative detention. 678 F.3d at 300. This case is materially different than Jones, where officers encountered a driver on private property—as opposed to at a gas station open to the public—parked in a way that blocked the driver's exit, did not dispute that the interaction was a "stop," asked the driver to lift his shirt, and then physically touched the driver during a pat down. Id. at 297–98. There, the officers' joint approach, requests for physically invasive action, and tacit characterization of the encounter as a "stop," were all "traditional hallmark[s]" of a coercive encounter, entirely absent from the case before us. See id. at 300–01. Thus, we do not find Jones persuasive for purposes of deciding this case.

11

inquiry outweigh whether he asked incriminating questions without requesting permission to do. Initially, "there is nothing unlawful about the practice of approaching individuals and asking them potentially incriminating questions, and there is no per se rule requiring law enforcement officials to specifically advise those individuals they do not have to answer police questions." United States v. Broomfield, 201 F.3d 1270, 1275 (10th Cir. 2000) (citations omitted). Indeed, "the mere fact that officers ask incriminating questions is not relevant to the totality-of-the-circumstances inquiry—what matters instead is *the manner* in which such questions were posed." Ringold, 335 F.3d at 1173 (internal quotation marks and citation omitted) (emphasis added). Specifically, "[a]ccusatory, persistent, and intrusive questioning can turn an otherwise voluntary encounter into a coercive one." Id. at 1174; cf. Jones, 701 F.3d at 1314 (reasoning that not every "accusatory assertion" is sufficiently coercive to make a reasonable person feel "that he was not free to discontinue the encounter and go about his business").[5]

---

[5] Preliminarily, Defendant argues that this determination is a factual finding subject only to clear error review, but "the presence of coercive police activity has generally been considered . . . an issue for de novo review." See Derrick v. Peterson, 924 F.2d 813, 818 (9th Cir. 1990), overruled on other grounds by United States v. Preston, 751 F.3d 1008 (9th Cir. 2014) (internal quotation marks and citation omitted)); cf. United States v. Zapata, 997 F.2d 751, 758 (10th Cir. 1993) (independently concluding that an agent subjected an individual to "fairly routine questioning" even though the district court found that the agent's manner of questioning was "accusatory and potentially incriminating"). Even if he were correct, however, his position still fails upon review for clear error because the district court's conclusion regarding the "coercive manner" of Agent Diharce's questioning is ultimately belied by the other factual findings in its order—namely, that "Agent Diharce's demeanor was non-threatening and he used a conversational tone when speaking to Defendant."

Upon introducing himself and Agent Ramirez as Border Patrol agents, Agent Diharce asked Defendant, "Are you a United States citizen?," and then "if the people in the [vehicle] were his family." Even assuming Agent Diharce's questions were "incriminating" in nature, his "demeanor was non-threatening and he used a conversational tone when speaking to Defendant," which mitigates any coerciveness inherent in the question. See Ringold, 335 F.3d 1172–74 (concluding that an officer's "non[-]threatening manner" and "friendly" tone makes a reasonable person feel free to decline to answer even an officer's "incriminating questions").[6] The subject matter of Agent Diharce's initial question—immigration status—was also not so intrusive as to disrupt the consensual nature of the encounter. See I.N.S. v. Delgado, 466 U.S. 210, 216 (1984) (concluding that "interrogation relating to one's identity . . . does not, by itself, constitute a Fourth Amendment seizure"). Agent Diharce's inquiry consisted of only two short questions, and he did not retain any of Defendant's effects, which further decreases the level of intrusion. See Thompson, 546 F.3d at 1226 (listing "whether and for how long the officers retain the defendant's personal effects such as tickets or identification" as another relevant factor).

---

[6] Defendant asserts that that the officer in Ringold did not immediately approach the suspect and initiated the conversation with small talk before asking "incriminating" questions "about illegal drugs and guns." Ringold, 335 F.3d at 1174. Even though Agent Diharce did not delay in approaching or questioning Defendant here, those distinctions appear slight given the commonalities in officer demeanor, tone, and nature of questions.

That Agent Diharce did not request permission to speak with Defendant or advise Defendant of his right to terminate the encounter also carries "little weight in our analysis." Thompson, 546 F.3d at 1228; see also Ringold, 335 F.3d at 1174 (concluding that a reasonable person need not receive such a notification to understand that he retains the right to terminate an encounter). The Supreme Court has "expressly rejected [a] rule which made all police encounters non-consensual where officers failed to advise individuals of their right not to comply with their requests." Thompson, 546 F.3d at 1228 (citing Drayton, 536 U.S. at 203). As the Supreme Court reasoned, an agent does not suggest to a reasonable person that he cannot terminate an encounter when the agent speaks "in a polite, quiet voice" and does "not brandish a weapon or make any intimidating movements." Drayton, 536 U.S. at 203–04. Agent Diharce's conversational tone without brandishing his weapon or making any other intimidating movement demonstrates that Defendant should have reasonably felt free to terminate the encounter. Thus, the manner— rather than the substance—of Agent Diharce's questions to Defendant does not outweigh the other factors that support the conclusion that the Agents encounter with Defendant was consensual, rather than an investigative detention.

Under the totality of the circumstances, we hold that the Agents' conduct should not have conveyed to a reasonable person that he "was not free to decline the [Agents'] requests or otherwise terminate the encounter." Bostick, 501 U.S. at 439. Thus, the encounter "falls clearly within the lines of a consensual encounter as drawn by Supreme Court precedent and our own prior rulings." Ringold, 335 F.3d at 1174.

14

Accordingly, we reverse the district court's order granting Defendant's motion to suppress under the Fourth Amendment.

B.

The government further contends that the Agents did not violate Defendant's Fifth Amendment <u>Miranda</u> rights because a consensual encounter does not amount to a custodial investigation. Under the circumstances, we agree the Agents were not required to provide Defendant with <u>Miranda</u> warnings.

The Fifth Amendment provides a "privilege against self-incrimination during 'custodial interrogation.'" <u>United States v. Rodriguez-Garcia</u>, 983 F.2d 1563, 1568 (10th Cir. 1993) (<u>Miranda</u> warnings require that officers inform a suspect of the right to remain silent and to an attorney before initiating a custodial interrogation); <u>accord</u> <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). Thus, "<u>Miranda</u> [warnings] need only be given to a suspect at the moment that suspect is *in custody* and the questioning meets the legal definition of *interrogation*." <u>United States v. Jones</u>, 523 F.3d 1235, 1239 (10th Cir. 2008) (internal quotation marks and citation omitted) (emphasis added).

Generally, assessing whether a Fourth Amendment seizure and a custodial interrogation under <u>Miranda</u> occurred are "analytically distinct inquiries." <u>Revels</u>, 510 F.3d at 1273. Our law, however, is well-settled that a consensual encounter with law enforcement is not subject to the strictures of <u>Miranda</u>. <u>See, e.g.</u>, <u>Jones</u>, 523 F.3d at 1244 (concluding that a consensual encounter is not "enough to trigger the <u>Miranda</u> requirements"). Defendant engaged in a consensual encounter with law enforcement, so we conclude that the Agents did not subject Defendant to a custodial

15

interrogation.  See supra Part II(A).  Thus, the encounter was not subject to the strictures of Miranda.  See Jones, 523 F.3d at 1244.  Accordingly, we reverse the district court's holding that the Agents violated Defendant's Fifth Amendment rights.

III.

For the foregoing reasons, we REVERSE the district court's order granting Defendant's motion to suppress and remand for further proceedings consistent with this order and judgment.

Entered for the Court


Joel M. Carson III
Circuit Judge